## WOODROW J. LIEVERS v. NATIONAL INSURANCE UNDERWRITERS.

101 N. W. (2d) 817.

February 5, 1960—No. 37,753.

*Iverson, Coulter & Nelson* and *David W. Nord,* for appellant.
*L. W. Crawhall* and *Harry H. Peterson,* for respondent.

MURPHY, JUSTICE.

This is an action to recover on an insurance policy defendant issued to plaintiff insuring him against losses from certain types of damage to his aircraft. Defendant appeals from a judgment for plaintiff.

Except for two issues, the facts as found by the court and jury are undisputed. After purchase of an aircraft in 1957, plaintiff applied

for and received from defendant a policy of insurance covering losses from damage to the aircraft. The policy was purchased on the installment plan of payment of premium, under which plaintiff was to pay the premium in three installments. The policy was to cover the period from April 12, 1957, to April 12, 1958, and the installment payments on the premium were to come due on May 3, 1957, July 12, 1957, and October 12, 1957.

On August 12, 1957, an accident occurred at International Falls, Minnesota, which completely destroyed the plane. That evening plaintiff called his wife and evidently told her about the accident but did not inform her of the extent of the damages. He rode home on the train. The next morning, August 13, 1957, the plaintiff's wife remitted to the insurer money orders totalling $317.40—the amount due for the installments due on May 3, 1957, and July 12, 1957. Up until that time plaintiff had made no attempt to pay the premium on the policy.

The defendant received the premium payment remitted by plaintiff's wife on August 16, 1957. On August 19, 1957, it issued an endorsement reinstating the policy as of August 13. On August 21, 1957, the company received from plaintiff's attorney a letter indicating that he claimed loss on the policy for the accident occurring on August 12. The company on the same day sent a letter to plaintiff's attorney denying liability under the policy on the ground that it was not in force on August 12, 1957. On August 23, 1957, it issued a check in plaintiff's favor returning the $317.40 remitted for premium payment by plaintiff.

The jury found, and the court below accepted the finding, that the defendant had mailed to the plaintiff and that he had received a notice which the company calls "FINAL NOTICE OF PREMIUM DUE—HELP US SAVE THIS POLICY HOLDER." This notice provides in part:

"DEAR POLICY HOLDER—A few weeks ago we mailed to you a notice of Premium Due in the amount listed below. Our records do not indicate receipt of your remittance. However it is our wish to give you ample time to make premium payment and if premium due indicated below is received by 12:01 A.M. 15 days after due date indicated below your policy will continue in force.

"CANCELLATION DATE—Since no further notice will be given, you are advised that your Aircraft Policy, number indicated below, will be cancelled for nonpayment of premium at 12:01 A.M. on the 15th day after due date indicated below, unless Premium is received in our office. We hope we may continue to serve you!"

The due date indicated was May 3, 1957.

■ It is contended that the notice is not sufficient to form a basis of cancellation of the policy. The plaintiff argues that it is tentative and conditional and in effect informed him that if he did not pay the premium he would run the risk of having the policy cancelled. We do not think there is anything in the plain wording of the notice to warrant such an interpretation of it. The notice clearly informs the insured that it is the last one he will receive and that the policy definitely described in it will be cancelled on a definite date unless the premium is received before that time.

It is generally agreed that in the absence of a statute or policy provision to the contrary a notice of cancellation need not be in any particular form. The notice is sufficient if it positively and unequivocally informs the insured that it is the intention of the company that the policy shall cease to be binding as such upon the expiration of a stipulated number of days from the time when its intention to cancel is made known to the insured.[1] In Cormican v. Anchor Cas. Co. 249 Minn. 196, 203, 81 N. W. (2d) 782, 788, we said:

"Although a notice of cancellation of an existing liability policy for failure to pay the premium need not be expressed in any particular form or language, it must, in explicit, unconditional, and unequivocal language, state that the policy is, or without further notice will stand, cancelled as of a certain day. A notice which merely expresses a desire, threat, or expectation of cancellation, or which in any manner is ambiguous or evasive and therefore falls short of announcing an

---

[1]29 Am. Jur., Insurance, § 283; see, also, 45 C. J. S., Insurance, §§ 450b, 473(5), 616; 6 Appleman, Insurance Law and Practice, § 4185; 6 Couch, Cyclopedia of Insurance Law, § 1442, p. 5101; Note, 50 L.R.A. (N.S.) 36, 38.

actual and unqualified cancellation as of a definite time if the premium is then unpaid, is invalid and does not terminate the policy or the liability of the insurer thereunder."

There is nothing conditional or ambiguous about the notice before us. If it is tested by the meaning it would reasonably convey to one who receives it, we cannot escape the conclusion that it communicates the definite information that a cancellation will occur at a definite time in the future if the recipient does not comply with his agreement to pay the premium within the stated time limit. After this definite and unqualified communication to the insured, there was no further obligation on the part of the insurance company to advise the insured that the policy had in fact been cancelled on its records.

■ It is next contended by the plaintiff that the insurance company waived any prior forfeiture of the policy and reinstated the coverage. In considering this argument it should be kept in mind that on August 13, 1957, when the insured's wife remitted the premium, the property covered by the policy had been completely destroyed. The company was not told of this fact. There was no airplane in existence to be insured. The company received the premium on August 16, 1957, and accepted it, not knowing that a loss had occurred, and on August 19 issued a reinstatement endorsement effective August 13, the date the premium had been mailed by Mrs. Lievers. On August 21 the insurance company received a notice from the insured advising it that a loss occurred on August 12, 1957, but this notice did not inform the company that the plane had been completely destroyed. This was the first information the insurance company had that a loss had occurred. Upon receipt of this information the company wrote to the plaintiff's attorney denying liability on the ground that coverage had been reinstated as of August 13, the day following the accident, and that there was no coverage on August 12. Two days thereafter the defendant refunded the entire premium for the reason that there was no airplane in existence to insure on August 13. At the same time it cancelled the reinstatement. The record definitely establishes that at no time prior to August 21 did the company have any knowledge that there had been a loss. Within a reasonable time and within 2 days

after learning of the loss, it tendered back the money paid by the insured.

On the authority of Seavey v. Erickson, 244 Minn. 232, 69 N. W. (2d) 889, 52 A. L. R. (2d) 1144, the plaintiff argues that, where the subject of an insurance policy has been totally destroyed and the insurer accepts payments due for such insurance, the acceptance of the premium operates as a waiver of any prior forfeiture of the policy of insurance. Seavey v. Erickson, *supra,* is not authority, however, for a holding to the effect that where an insurer accepts and retains a premium on a policy *without knowledge of a loss* such act constitutes a waiver. It is true that the right to insist upon a forfeiture may be waived under circumstances where an insurer entitled to forfeiture, with knowledge of the default, treats the contract as in force and deals with the insured in a manner *consistent only* with a purpose on its part to regard the contract as still subsisting and not terminated by the default. Blazek v. North American Life & Cas. Co. 251 Minn. 130, 87 N. W. (2d) 36; Mee v. Bankers' Life Assn. 69 Minn. 210, 72 N. W. 74; Baughman v. Niagara Fire Ins. Co. 163 Minn. 300, 204 N. W. 321; Northwestern F. & M. Ins. Co. v. Connecticut Fire Ins. Co. 105 Minn. 483, 117 N. W. 825.

We do not think the record supports the conclusion that the insurer's conduct may be regarded as evidence that it intended to treat Lievers' policy as in force. Within a reasonable time after learning of the loss, it advised the insured that there was no coverage and voluntarily returned the premium. We find nothing in the record inconsistent with the insurer's position that the policy was not in force on the date of the accident—August 12, 1957. 9 Dunnell, Dig. (3 ed.) § 4686; 45 C. J. S., Insurance, § 716b(2); 16 Appleman, Insurance Law and Practice, § 9303.

It is unnecessary for us to discuss the issue as to whether or not the insured actually received the notice of cancellation. A jury was impanelled and found by special verdict, which is fully supported by the record, that the insured did in fact receive a copy of the notice of cancellation on or before May 13, 1957.[2]

Reversed.

---

[2]Donarski v. Lardy, 251 Minn. 358, 88 N. W. (2d) 7.