Francis M. **CADUFF**, Respondent,

v.

**UNIVERSAL UNDERWRITERS INSURANCE CO.**, Appellant,

and

**Debbie Roering**, Intervenor, Respondent.

No. C8–85–1223.

Court of Appeals of Minnesota.

Jan. 28, 1986.

Review Denied March 27, 1986.

Leo M. Daly, St. Paul, for Francis M. Caduff.

Mark A. Gwin, Peter G. Van Bergen, Cousineau, McGuire, Shaughnessy & Anderson, Minneapolis, for Universal Underwriters Insurance Co.

Mark W. Gehan, Jr., Collins, Buckley, Sauntry & Haugh, St. Paul, for Debbie Roering, Intervenor.

Heard, considered and decided by LANSING, P.J., and HUSPENI and LESLIE, JJ.

## OPINION

LANSING, Judge.

This appeal is from a declaratory judgment determining Universal Underwriters' attempt to cancel Francis Caduff's motorcycle liability policy was ineffective and reforming the policy to include PIP benefits. We affirm.

## FACTS

On March 15, 1982, respondent Francis Caduff applied for a motorcycle insurance policy with appellant Universal Underwriters in response to an offer received through the mail. The solicitation offered three separate insurance plans. Caduff chose plan "C", the most comprehensive of the plans, which included liability, collision, and fire and theft coverages. The offering circular included, as options, uninsured coverage and personal injury protection (PIP) (the no-fault basic economic loss benefits, *see* Minn.Stat. § 65B.44 (1982)). Premiums were determined on a chart by cross-referencing the size of the motorcycle with the chosen plan. Using the chart, Caduff computed the yearly liability premium for his motorcycle at $283. He requested uninsured coverage, which cost $11, for a total premium of $294. The circular provided an "easy payment plan" which required an initial payment of 30 percent of the total premium plus a service charge of $3.75, the remaining premium to be billed in three installments. No dates were specified for the future payments. Caduff checked the application box for the easy payment plan. He enclosed a money order for $91.95 (30 percent of $294 plus $3.75 service charge). He did not include the PIP premium in his total premium calculation.

Universal received Caduff's application on March 18, 1982. On March 24, 1982, Frances Barnes, a Universal employee, sent Caduff a letter requesting that he either specifically waive or accept PIP coverage. The letter stated that if Caduff did not either remit the PIP premium of $273 or sign the waiver, then Universal would "short-term" his policy to include PIP bene-

fits using the money that Caduff had already sent.

Caduff returned the PIP waiver unsigned. On the waiver form he wrote, "I do not understand. Please send me bill for (P.I.P.)? I already sen[t] you $90.00 or so." Universal received this document on April 1, 1982.

On April 9, 1982, Universal issued Caduff his policy. The policy did not provide PIP coverage. There was evidence at trial that Universal had generated a premium installment bill for Caduff on April 27, but Caduff testified he did not receive a bill from Universal.

At the end of April 1982 Caduff replaced his 1981 Honda with a new 1982 Honda motorcycle, and on May 20, 1982, he requested that Universal transfer his policy to the new cycle. On the policy service request form Caduff asked to be billed for any additional or transfer fee. Universal received this form on May 25.

On May 28, 1982, Universal mailed Caduff a notice of cancellation of his policy. The cancellation notice recited the policy number and listed the 1981 Honda. The stated reason for cancellation was nonpayment of premium; cancellation was effective June 11, 1982. The document provided that the policy would not be cancelled if Caduff remitted $209.55 before the cancellation date. Caduff received the cancellation notice. He testified, however, that, to him, the cancellation notice meant Universal was cancelling the policy on the 1981 Honda and reissuing a policy on the 1982 Honda, which was "just exactly what [he] wanted."

Finally, on June 2, 1982, Universal mailed Caduff a new declaration sheet amending the policy to provide coverage on Caduff's new 1982 motorcycle. In the space for "Return or additional premium," the amount $.00 was entered. Caduff did not mail any additional money to Universal. On June 26 Caduff and intervenor Debbie Roering were injured in an accident that occurred while they were riding the 1982 Honda.

Universal denied coverage on the ground the policy was cancelled, and Caduff brought this declaratory judgment action. The trial court found that Universal did not send Caduff a bill before sending the notice of cancellation and that the "sequence and timing" of the request for new coverage on the new motorcycle, the cancellation notice, and the issuance of the amended declaration sheet created "a situation of distinct ambiguity." On these facts the court concluded the cancellation was "conditional, equivocal, ambiguous and confusing" and hence ineffective. The court also found that Caduff had requested PIP coverage and reformed the insurance contract to include basic economic loss benefits. There was no motion for a new trial.

## ISSUES

1. Did Universal effectively cancel Caduff's insurance policy?

2. Was the policy properly reformed to include basic economic loss benefits?

## ANALYSIS

### I

Minn.Stat. § 65B.16 (1984) provides:

No notice of cancellation * * * of an automobile insurance policy * * * shall be effective unless the specific * * * reason or reasons for such cancellation are stated in such notice and the notice is mailed or delivered by the insurer to the named insured at least 30 days prior to the effective date of cancellation; provided, however, that when nonpayment of premium is the reason for cancellation * * * at least ten days notice of cancellation shall be given. When nonpayment of premiums is the reason for cancellation, the reason must be given to the insured with the notice of cancellation * * *.[1]

---

1. Minn.Stat. §§ 65B.14–.21 apply to motorcycle policies pursuant to Minn.Stat. § 65B.14, subd. 2.

Universal argues that its cancellation notice met all the requirements of Minn.Stat. § 65B.16 because the notice clearly stated that nonpayment of premium was the reason for cancellation and more than ten days' notice was provided.

In response, Caduff claims that a cancellation notice based on nonpayment of premiums can be effective only if the insurer first proves that an insured actually received a premium bill and failed to pay it. Caduff's contention is based on Minn.Stat. § 65B.14, subd. 4, which provides:

"Nonpayment of premium" means failure of the named insured to discharge when due any of his obligations in connection with the payment of premiums on a policy of automobile insurance or any installment of such premium * * *.

Caduff argues that because he did not receive a bill, he could not have failed "to discharge when due" his obligation to pay the premium. Thus, Caduff contends, Universal cannot claim nonpayment of premium, and the cancellation on this ground is ineffective.

We note initially that the statutes relating to cancellation of automobile liability policies, Minn.Stat. §§ 65B.14–.21, expressly changed the common law to require proof of mailing of a cancellation notice rather than proof of actual notice or receipt. *See* Minn.Stat. § 65B.18; *Evans v. Government Employees Insurance Co.*, 257 N.W.2d 689, 692 (Minn.1977). It is unlikely the legislature intended to eliminate the need to prove actual notice of a policy cancellation and still require, under § 65B.14, subd. 4, proof of actual receipt of a premium bill before a "nonpayment of premium" cancellation would be effective.

■ Instead, § 65B.14, subd. 4, simply defines for an insured what the insurer is *claiming* when it sends a cancellation notice based on nonpayment of premium. We decline to hold that proof of receipt of a premium bill is necessary to support a cancellation based on nonpayment of premium under the statute.

However, compliance with the statutory cancellation provisions alone does not assure effective cancellation. Our supreme court additionally requires that

notice of cancellation of an existing liability policy for failure to pay the premium must be "explicit, unconditional, and unequivocal" and must make clear that coverage will cease without further notice. *Cormican v. Anchor Casualty Co.*, 249 Minn. 196, 203–04, 81 N.W.2d 782, 788 (1957). The unequivocal message of cancellation must be "tested by the meaning it would reasonably convey to one who receives it." *Lievers v. National Insurance Underwriters*, 257 Minn. 268, 271, 101 N.W.2d 817, 819 (1960).

*Dairyland Insurance Co. v. Neuman*, 338 N.W.2d 37, 41 (Minn.1983).

In concluding that the cancellation notice was ineffective, the trial court did not find the notice *itself* was equivocal or conditional. Instead, it found that the "timing and sequence" of the request for policy service, cancellation notice, and amended declarations page rendered the cancellation notice confusing and hence ineffective.

■ Approximately ten days after Caduff requested that Universal change the policy to cover his 1982 motorcycle and eliminate coverage of the 1981 model, he received the cancellation notice. The notice specifically recited Caduff's policy number and listed his 1981 Honda, despite the fact that Universal had already received his request to transfer the coverage to the 1982 Honda. Approximately five days after receiving the cancellation notice, Caduff received a document reflecting that his 1982 Honda was now covered under his policy. We agree with the trial court that under these unusual circumstances and "tested by the meaning it would reasonably convey to one who receives it," *Lievers*, 257 Minn. at 271, 101 N.W.2d at 819, this cancellation notice failed to explicitly and unequivocally notify Caduff of the impending cancellation of his policy. It was therefore ineffective to cancel the policy. *See Cormican v. Anchor Casualty Co.*, 249 Minn. at 203–04, 81 N.W.2d at 788.

## II

The trial court also held that the evidence of the circumstances surrounding the formation of the policy justified reformation to include PIP coverage. Generally,

[a] written instrument can be reformed by a court if the following elements are proved: (1) there was a valid agreement between the parties expressing their real intentions; (2) the written instrument failed to express the real intentions of the parties; and (3) this failure was due to a mutual mistake of the parties, or a unilateral mistake accompanied by fraud or inequitable conduct by the other party. * * * These facts must be established by evidence which is clear and consistent, unequivocal and convincing.

*Nichols v. Shelard National Bank,* 294 N.W.2d 730, 734 (Minn.1980). "To secure reformation of a policy, [an insured has] the burden of showing that it did not reflect the agreement [the insured] and the company actually reached." *Tollefson v. American Family Insurance Co.,* 302 Minn. 1, 8, 226 N.W.2d 280, 285 (1974). *See also Davidson v. State Farm Mutual Automobile Insurance Co.,* 373 N.W.2d 642, 647 (Minn.Ct.App.1985) (citing *Nichols* test for reformation of insurance policy).

 The trial court's finding that the parties mutually intended the policy to provide PIP coverage, for at least some period of time, is not clearly erroneous. Universal's letter to Caduff in response to his insurance application stated:

If we do not receive the signed [PIP] rejection and/or additional premium within 15 days, it will be necessary for us to short-term your policy *to include Personal Injury Protection,* using the money we now have.

By the express language of this letter, it is clear that unless PIP benefits were waived, Universal intended the policy to include PIP coverage, even if the policy had to be short-termed to include it. The trial court found that in response to this letter, Caduff asked to be billed for PIP. This correspondence provides clear evidence that the parties intended the policy to include PIP benefits.

The fact that Universal failed to actually short-term the policy to include the coverage is not significant. Caduff was told that PIP coverage would be provided unless he specifically waived it. Universal's failure to properly cancel the policy does not affect the parties' agreement that the policy should include PIP coverage. The trial court properly reformed the insurance policy to include the coverage agreed upon.

## DECISION

The timing and sequence of the insurer's cancellation notice in a course of correspondence with the insured rendered the notice equivocal and therefore ineffective. The trial court properly reformed the insurance contract to include basic economic loss benefits.

Affirmed.