**Charlan K. PIERCE as trustee for the next of kin of the decedent, Jack L. Pierce, Respondent,**

v.

**MSI INSURANCE COMPANY, Defendant and Third-Party Plaintiff, Appellant,**

**Farmer's Insurance Group, Respondent,**

v.

**Helen BLAISDELL, Third-Party Defendant, Respondent.**

No. C2–86–1552.

Court of Appeals of Minnesota.

May 26, 1987.

John R. Moonan, Johnson & Moonan, Mankato, for Charlan K. Pierce.

Richard J. Kruger, Richard J. Kruger & Associates, St. Paul, for MSI Ins. Co.

Gene P. Bradt, Hansen, Dordell, Bradt, Odlaug & Bradt, St. Paul, for Farmer's Ins. Group.

David Gronbeck, Hagberg & Gronbeck, Minneapolis, for Helen Blaisdell.

Heard, considered, and decided by LESLIE, P.J., and SEDGWICK and HUSPENI, JJ.

## OPINION

LESLIE, Judge.

In a declaratory judgment action, the trial court held respondent Helen Blaisdell's policy with respondent Illinois Farmer's Insurance Group had lapsed and was not in force on the day of the accident. Consequently, the trial court held that appellant MSI Insurance Company's uninsured motorist policies with the decedent were applicable and that MSI was liable under the terms of those policies. We affirm.

## FACTS

Helen Blaisdell was insured by Illinois Farmer's Insurance Group for successive six-month policy periods, through November 1983. The policy provided for a $25,000 liability limit per person with a $50,000 limit per accident. In the months prior to November 30, 1983 Blaisdell paid less than the entire premium for the policy. Regardless of the amount she was billed, she tendered a $32 payment. Blaisdell received a notice of cancellation from Farmer's on November 14, 1983 which stated her insurance would be canceled effective 12:00 noon on November 30, 1983 unless she made full payment in the amount of $80.29. The notice further stated this was the *only* notice she would receive. She also received an invoice from Prematic Service Corporation, the company Farmer's uses to service monthly payment, reflecting her November 1, 1983 payment of $32.

Blaisdell was also informed on two separate occasions about such cancellation by Bill Hanson, her Farmer's Insurance agent. In the latter part of November, Hanson advised Blaisdell that she would have no automobile coverage as of November 30, 1983, unless she made full payment. On December 10, 1983 he advised Blaisdell she no longer had any automobile coverage because she had not paid the premium.

On December 13, 1983 Blaisdell was involved in an accident which killed Jack L. Pierce. Later that day the accident was reported to the Hanson Agency. No mention was made of any injuries resulting from the accident. Regardless of Blaisdell's insurance status, Pierce had $100,000 of uninsured motorist insurance with MSI Insurance Company on the date of the accident.

Subsequent to the accident, Bruce or Bette Blaisdell sent a check dated December 15, 1983 in the amount of $80.29 payable to Bill Hanson. Hanson was advised by the Farmer's claims department to collect the past due premium payment from Blaisdell and hold it pending Farmer's determination of the status of Blaisdell's automobile insurance policy. Hanson never forwarded the check to Farmer's. He was unable to state clearly whether he ever deposited the check, but he ultimately sent a refund check to Blaisdell on February 23, 1984.

Respondent Charlan K. Pierce, as trustee for the next of kin of the decedent, Jack L. Pierce, commenced a declaratory judgment action against MSI Insurance Company and Illinois Farmer's Insurance Group. Blaisdell was also joined. The purpose of this declaratory judgment action was to determine whether the survivors of Pierce were to collect liability insurance from Farmer's under the policy issued to Helen Blaisdell, with a $50,000 liability limit, or, in the alternative, uninsured motorist benefits from MSI under a policy issued to Pierce with a $100,000 liability limit. After an aborted arbitration attempt the action proceeded to trial.

MSI and Blaisdell argued that the Farmer's policy was in force on the day of the accident. They argued Blaisdell had received inadequate notice of cancellation and that Farmer's was further estopped from

canceling coverage due to nonpayment of premium because Farmer's course of dealing with Blaisdell included accepting less than full payment. Alternatively, they contended Farmer's had waived its right to cancel the policy by accepting Blaisdell's past due premium after knowledge of the accident.

The trial court found that Blaisdell's Farmer's policy had lapsed due to nonpayment of premium and was not in force on the date of the accident. The court found Blaisdell had received proper notice of cancellation and that this notice had effectively abandoned any previous course of dealing between Farmer's and Blaisdell. Finally, the court found no waiver of the right to insist on forfeiture had taken place. Consequently, the court concluded "the uninsured motorist coverage provided by two MSI insurance policies covering Jack L. Pierce on the date of the accident is available to his survivors."

## ISSUE

Did the trial court properly find respondent Blaisdell's policy with respondent Farmer's Insurance had lapsed on the date of the accident?

## ANALYSIS

The trial court found Farmer's properly sent notice of cancellation and that Blaisdell's insurance was thereby canceled effective November 30, 1983 at 12:00 noon when she did not remit full payment by that time. We agree.

Minn.Stat. § 65B.15, subd. 1 (1986) provides:

> No cancellation or reduction in the limits of liability of coverage during the policy period of any policy shall be effective unless notice thereof is given and unless based on one or more [of the following reasons:]
> 1. Nonpayment of premium;

Minn.Stat. § 65B.16 provides:

When nonpayment of premiums is the reason for cancellation, the reason must be given to the insured with the notice of cancellation; and if the company is exer-

cising its right to cancel within the first 59 days of coverage and notice is given with less than ten days remaining in the 59-day period, the coverage must be extended, to expire ten days after notice was mailed.

Farmer's mailed a notice of cancellation to Blaisdell giving her more than ten days notice. The "date mailed" stated on the cancellation notice is November 14, 1983 and the "cancellation date" set forth is November 30, 1983. The reason for the cancellation, nonpayment of premium, is stated in red on the notice. This notice effectively complies with Minnesota law.

■ Appellant MSI argues the notices sent to Blaisdell were "ambiguous and contradictory." Notice of cancellation of an existing liability policy for failure to pay the premium must be "explicit, unconditional and unequivocal" and must make clear that coverage will cease without further notice. *Dairyland Ins. Co. v. Neuman*, 338 N.W.2d 37, 41 (Minn.1983) (citing *Cormican v. Anchor Casualty Co.*, 249 Minn. 196, 203–04, 81 N.W.2d 782, 788 (1957)). The unequivocal message of cancellation must be "tested by the meaning it would reasonably convey to one who receives it." *Lievers v. National Ins. Underwriters*, 257 Minn. 268, 271, 101 N.W.2d 817, 819 (1960). The notice must provide that coverage is, or without further notice will be, cancelled as of a certain day. *Cormican*, 249 Minn. at 203, 81 N.W.2d at 788.

In *Dairyland* the notice sent to the insured did not even use the word "cancellation" but rather stated on its face that the document was a "renewal notice" and there was "no grace period." *Dairyland*, 338 N.W.2d at 41. In contrast, the notice Farmer's sent to Blaisdell was expressly labeled NOTICE OF CANCELLATION– NON–PAYMENT OF PREMIUM in bold red letters. The notice stated that if full payment was made by 12:00 noon on November 30, 1985 the policy would be continued in force without interruption. The time and date of cancellation were clearly stated, yet payment was not made. The notice was clear and unequivocal.

MSI suggests Blaisdell was confused by the sequence of events and thus did not receive notice. Appellant claims that "two days after notice of cancellation was properly sent Mrs. Blaisdell received her regular monthly billing from Farmers' finance company Prematic." MSI contends this subsequent document rendered the original notice ambiguous relying on *Caduff v. Universal Underwriters Insurance Co.*, 381 N.W.2d 9 (Minn.App.1986) *pet. for rev. denied* (Minn. Mar. 27, 1986). In *Caduff* this court found the notice of cancellation was sufficient, yet held that the "timing and sequence" of the request for policy service, cancellation notice, and amended declarations page rendered the cancellation notice confusing and hence ineffective. *Id.* at 12. In *Caduff* the insured received notice from the insurer in a confusing order and the insured made a sincere effort to straighten out the confusion with the insurance company.

In the present case oral conversations between Blaisdell and Farmer's' agent, Hanson, establish that Blaisdell understood she was without insurance coverage on December 13, 1983, the date of the accident. In November of 1983 agent Hanson informed Blaisdell that she would have no automobile insurance coverage as of November 30, 1983 unless she paid the $80.29 past due premium amount. Blaisdell admitted at trial that she thought this conversation had in fact taken place. Further, at a family gathering in Mankato on December 10, 1983, Hanson advised Blaisdell she no longer had coverage. When asked about her response to his information Hanson replied that Blaisdell "broke down at the time." The testimony and evidence at trial show that Blaisdell not only had adequate notice of cancellation under Minnesota statutory and case law, but that she also understood she was without coverage at the time of the accident.

■ Appellant further argues Farmer's should be estopped from canceling Blaisdell's policy because they had established a course of dealing with her which included acceptance of late payments. The trial court found, "assuming without deciding,

that a course of dealing was established by Farmer's repeated acceptance of late premiums, such a course of dealing is inapplicable to the payment of Mrs. Blaisdell's overdue premium because the notice of cancellation served as notice of Farmer's intent to abandon the course of dealing. Thus, Farmer's is not estopped from raising the claim that the policy was canceled due to nonpayment of premium."

Appellant MSI contends that if Farmer's had established a practice with an individual insured, even if it was against general company policy, the insured has a right to rely on that practice. To support this, appellants cite *Seavey v. Erickson*, 244 Minn. 232, 69 N.W.2d 889 (1955). In *Seavey* the court specifically held:

> [W]here it has been established that it is the custom and practice of the insurer to give notice of the time for payment of a renewal premium and knowledge of such custom is acquired by an insured in dealings with the insurer, the insured has a right to rely on such notice, and, in the absence thereof, the policy may not be terminated or forfeited without giving the insured some notice that such custom has been abandoned.

*Id.* at 243–44, 69 N.W.2d at 897 (footnote omitted).

Blaisdell was informed on November 14 that despite the past acceptance of less than full payment by Farmer's she would now be required to remit *full* payment of $80.29 to continue her insurance coverage past the November 30 cancellation date. The date this payment was due was clearly specified. At this point Blaisdell had received the necessary notice that Farmer's would not continue any course of dealing allowing for less than full late payments. This conclusion is consistent with *Seavey*.

Additionally, appellant MSI, in seeking to establish the course of dealing between Farmer's and Blaisdell, points out Blaisdell's practice of consistently responding to Farmer's mid-month bill with a $32 payment on or about the first of the following month. This argument loses credibility because the record shows that not only did Blaisdell not make the *full* payment de-

manded of her by November 30, she didn't even continue her usual practice of paying $32 on or near the first of December. The accident took place on December 13 and nothing at all was paid until December 15, 2 days after the accident, 2 weeks after the notice stated the cancellation was to take effect, and 2 weeks after her customary payment timing.

On the waiver issue the trial court noted that "mere receipt of a past-due premium is not tantamount to acceptance of that premium by the insurer," and concluded that "Hanson's receipt of the past-due premium after knowledge of a loss did not create a waiver of Farmer's rights to declare the policy canceled as of November 30, 1983." We agree.

In *Seavey*, 244 Minn. 232, 69 N.W.2d 889, the insurance company accepted and retained a late premium for an accident that had occurred subsequent to lapse of the policy. *Id.* at 245–47, 69 N.W.2d at 898. The insurance company demanded and received cooperation in the investigation of the accident. *Id.* They took charge of, and paid for, disposal of the wreckage. *Id.* Yet, with full knowledge that the object of the insurance had been destroyed, the insurance company applied the late payment prospectively. *Id.* The *Seavey* court found that "where the insurer has knowledge of the total destruction of the insured property and thereafter accepts a premium on insurance covering such property, it should be deemed to have waived a forfeiture of the policy." *Id.* The court in *Lievers v. National Insurance Underwriters*, 257 Minn. 268, 272, 101 N.W.2d 817, 820 (1960) stated the rule as follows: "[T]he right to insist upon a forfeiture may be waived under circumstances where an insurer entitled to forfeiture, with knowledge of the default, treats the contract as in force and deals with the insured in a manner *consistent only* with a purpose on its part to regard the contract as still subsisting and not terminated by default." *Id.* (emphasis in original).

Hanson testified at trial that he never "accepted" the check. He never forwarded it to Farmer's, but merely held it pending an investigation of the status of Blaisdell's policy. Hanson also testified that at no time did he indicate to Blaisdell that payment of the past-due premium on December 15 would be retroactive to before the date of the accident. Additionally, in an out-of-force notice sent to Hanson and Blaisdell, dated December 16, Blaisdell was not only advised she would be without coverage on December 13, the date of the accident, but did not even qualify for automatic reinstatement as of December 15, when the $80.29 past-due payment was made. Presumably because no payment at *all* was made on the November 14 bill, this out-of-force notice states that Blaisdell was not eligible for Prematic reinstatement because this was the second cancellation in 12 months. Admittedly, there is some confusing language at the bottom of this out-of-force notice which instructs the insured to submit total payment by January 28, 1984 to reinstate the account. Still, the final sentence states that the account would only be reinstated effective on the date the total premium due is received. This total premium due was not received until at least two days after the accident.

Since Farmer's did not accept and retain the premium, nor recognize the continued validity of the policy or do acts based thereon, *Seavey*, 244 Minn. at 243–44, 69 N.W.2d at 898, the trial court properly found that Farmer's did not waive its right to cancel the policy.

## DECISION

The trial court properly found respondent Blaisdell's insurance to have lapsed, making decedent's uninsured motorist insurance benefits from appellant available.

Affirmed.