*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1627**

Minnesota Joint Underwriting Association,
Respondent,

vs.

Jacy, LLC, et al.,
Appellants.

**Filed June 13, 2016
Affirmed
Ross, Judge**

Ramsey County District Court
File No. 62-CV-14-5881

Suzanne L. Jones, Hinshaw & Culbertson LLP, Minneapolis, Minnesota (for respondent)

Britton D. Weimer, Jones Satre & Weimer, PLLC, Bloomington, Minnesota; and

Matthew W. Moehrle, Britton D. Weimer, Rajkowski Hansmeier, Ltd, St. Cloud. Minnesota (for appellants)

Considered and decided by Reyes, Presiding Judge; Ross, Judge; and Smith, Tracy, Judge.

# U N P U B L I S H E D   O P I N I O N

**ROSS**, Judge

A company that operates an adult residential care facility carried liability insurance

under a claims-made policy issued by the Minnesota Joint Underwriting Association, but

the association notified the company in early April 2011 that the policy would expire in July 2011 and that the company had until the end of April to apply for continued coverage. A communication exchange ensued, resulting in the association's decision that the company failed to renew the policy followed by the company's challenge to that decision. In the meantime, family members of a client who had died at the company's residential facility notified the company that they intended to bring a wrongful-death action against it, and the company in turn notified the association of the claim. The association denied coverage for the claim, and, after the association sued for a declaratory judgment, the district court held that the association was not required to cover the claim because the company failed to make the claim during the policy period. We affirm because the association gave the company sufficient notice of nonrenewal, triggering a 60-day period during which the company could have, but did not, adequately apply for renewed coverage.

**FACTS**

Carmen Wilson created Jacy LLC in 2006 to operate South Rock, a Litchfield adult residential care facility. The Minnesota Joint Underwriting Association (MJUA) is a creature of the legislature established to provide insurance coverage for people and entities who are required by law to carry insurance but who are unable to obtain it. *See* Minn. Stat. § 62I.02, subd. 1 (2014). The MJUA first issued a claims-made liability annual insurance policy to Jacy in 2007, and Jacy renewed the policy several times. The MJUA issued the last of these policies to Jacy in 2010.

The 2010 policy identifies the named insured as "Jacy, LLC" and the policy period as July 1, 2010, to July 1, 2011. It states that the policy covers only those claims made either during the policy period or during an extended reporting period.

Wilson formed Tomorrow LLC in February 2011 during Jacy's July 2010 to 2011 policy period. She intended to combine Jacy and another limited liability company into the single entity—Tomorrow—to operate the South Rock care facility. But Tomorrow did not immediately obtain a license to operate the facility. Two months before Tomorrow obtained its operational license on May 1, 2011, a resident client at South Rock (which was still being operated by Jacy) died in the home. Wilson learned of the death immediately, but she did not report it to the MJUA because the resident's family had made no claim.

The MJUA sent Jacy a letter on April 7, 2011, notifying it that its insurance policy would expire on July 1, 2011. The expiration letter explained that Jacy must complete and return its policy-renewal application form, with specified attachments (including Jacy's license to operate the facility) by April 30, 2011, to continue coverage. Wilson sent an email to an MJUA employee on April 18, attaching a renewal application referencing the policy number held by Jacy but identifying the name of the insured as "Tomorrow, LLC dba South Rock (Formerly Jacy, LLC)." Wilson's email stated that she had merged Jacy and another company into a new company, and she asked if she could merge into a single policy the policies that separately insured Jacy and the other company. Wilson did not attach a copy of any operational license for the South Rock facility.

Wilson wrote to the MJUA again on May 9, 2011. Her letter again referenced the merger between Jacy and the other company she managed, asking the MJUA to cancel the

3

policy covering the other company and to add its information to the policy that covered Jacy. Wilson's letter stated that the two companies were merging into the single company, named Tomorrow. And she explained that an operational license for South Rock had been applied for in Tomorrow's name but not yet received. Wilson attached a copy of the South Rock license under Jacy, not under Tomorrow.

The MJUA sent Jacy a letter on July 11, 2011, informing Jacy that its policy was not renewed, effective July 1, 2011. The letter offered Jacy the extended reporting period endorsement, which would facilitate coverage for claims that Jacy might make to the MJUA after the policy expired on July 11. Wilson checked the box indicating that Jacy was declining the extended reporting period endorsement, and she returned the letter on July 14. Jacy paid no premiums to the MJUA for coverage after July 1, 2011. A communication exchange between the MJUA and Jacy's insurance agent ensued in February 2012, and during this exchange the MJUA detailed the Jacy-policy nonrenewal, Jacy's failure to complete the renewal application, and Jacy's rejection of extended reporting coverage. The MJUA then issued a claims-made policy to Tomorrow with a new policy number.

Wilson received notice that the decedent's estate was bringing a wrongful-death action against Jacy and Tomorrow, and on June 6, 2012, she contacted the MJUA and informed it of the claim. The MJUA replied, denying coverage because Jacy's policy terminated in July 2011 and Jacy declined extended reporting coverage.

The wrongful-death lawsuit commenced in March 2014 against Jacy and against Tomorrow as Jacy's successor in interest. The MJUA asked the district court for a

4

judgment declaring that it is not obliged to indemnify Jacy or Tomorrow in the action. The parties stipulated to certain facts, and, based on that stipulation and other undisputed facts, the district court granted the MJUA's motion for summary judgment. It held that the MJUA had no duty to indemnify Jacy for liability arising out of the resident's death.

Jacy and Tomorrow appeal.

## D E C I S I O N

Jacy and Tomorrow challenge the district court's grant of summary judgment. We review a district court's grant of summary judgment de novo, determining whether the court properly applied the law and whether material fact disputes exist. *Riverview Muir Doran, LLC v. JADT Dev. Grp., LLC*, 790 N.W.2d 167, 170 (Minn. 2010). Our decision turns in part on the 2010 insurance contract between Jacy and the MJUA. Contract interpretation is a question of law reviewed de novo. *Caldas v. Affordable Granite & Stone, Inc.*, 820 N.W.2d 826, 832 (Minn. 2012).

Although the resident died during the policy period, coverage under a claims-made policy is triggered when the claim is made, not when the event creating the potential liability occurred. *In re Silicone Implant Ins. Coverage Litig.*, 667 N.W.2d 405, 409 (Minn. 2003). So the MJUA can be obligated to cover the wrongful-death claim only if the claim was made during the policy period or during an extended reporting period. Jacy acknowledges that the wrongful-death claim was not made until June 2012 and that Jacy purchased no extended reporting coverage. So unless Jacy's policy renewed, its claim fell outside the policy period and the MJUA is not obligated to cover Jacy for any liability it

5

incurred because of the alleged wrongful death. We turn to the policy and the operative statute.

The parties interpret differently the renewal provision of the insurance policy and the requirements of Minnesota Statutes section 60A.37 (2014). The statute provides for a 60-day nonrenewal notice period:

> At least 60 days before the date of expiration provided in the policy, a notice of intention not to renew the policy beyond the agreed expiration date must be made to the policyholder by the insurer. If the notice is not given at least 60 days before the date of expiration provided in the policy, the policy shall continue in force until 60 days after a notice of intent not to renew is received by the policyholder.

Minn. Stat. § 60A.37, subd. 1. We need not consider which statute controls as between this provision governing insurance contracts generally and section 62I.13, subdivision 5 (2014), which governs MJUA insurance contracts specifically and calls for a 30-day notice of intent not to renew. This is because the Jacy-MJUA insurance policy itself includes the longer, 60-day nonrenewal notice period.

Jacy argues that because MJUA failed to provide the 60-day nonrenewal notice required by statute and the policy, the policy automatically renewed for an additional year and was therefore in effect when Jacy made its claim for the wrongful-death lawsuit in June 2012. The MJUA counters, arguing that it was not required to give a nonrenewal notice. It urges that section 60A.37 specifically indicates that the 60-day notice is required only when the insurer (rather than the insured) has an "intention not to renew the policy beyond the agreed expiration date." Minn. Stat. § 60A.37, subd. 1. The MJUA points to the exception listed in section 60A.37, subdivision 2, which provides that the section "does

6

not apply if the policyholder has insured elsewhere, has accepted replacement coverage, or has requested or agreed to nonrenewal." The Jacy-MJUA policy includes a materially identical list of exceptions. The MJUA asserts that Jacy essentially requested or agreed not to renew its policy in responding to the renewal application by applying for coverage for an entity other than Jacy (Tomorrow). Jacy parlays the argument with its own.

But we need not decide whether Jacy or the MJUA has the better position here over whether or not Jacy requested or agreed to nonrenewal. This is because we are satisfied that, either way, the MJUA eventually sufficiently notified Jacy that the policy was not renewing, and after this notice Jacy failed to act to renew or extend within 60 days. The statute establishes the length of a policy extension that follows an insurer's tardy nonrenewal notice: "If the notice is not given at least 60 days before the date of expiration provided in the policy, the policy shall continue in force *until 60 days after a notice of intent not to renew is received by the policyholder.*" *Id.* (emphasis added). For the following reasons, we believe that the MJUA's letter of July 11, 2011, indicating that coverage had ceased, is sufficient notice that the Jacy policy was not being renewed.

We consider whether the July 11, 2011 letter constitutes adequate notice de novo, as a question of law. *See Benton v. Mut. of Omaha Ins. Co.*, 500 N.W.2d 158, 160 (Minn. App. 1993) (analyzing the adequacy of written notice of reduction in coverage), *review denied* (Minn. July 19, 1993). The parties' policy establishes two technical requirements for a valid nonrenewal notice: The 60-day notice of nonrenewal must be in writing, and the notice must be delivered or mailed first class to the named insured's last known mailing address. The record satisfies us that the July 2011 letter met both these requirements.

7

We know of no authority defining the substantive adequacy of a 60-day nonrenewal notice under section 60A.37, but for guidance we look to caselaw governing the analogous notice of cancellation. Cancellation notice is sufficient if it "positively and unequivocally" informs the insured that coverage is ceasing. *Lievers v. Nat'l Ins. Underwriters*, 257 Minn. 268, 270, 101 N.W.2d 817, 819 (1960). The notice's sufficiency is tested by the meaning it reasonably conveys. *Id*. at 271, 101 N.W.2d at 819. The MJUA's July 11 letter identified the Jacy policy number and declared that the "insurance policy was non-renewed by you effective 7/1/2011." The letter informed Jacy that because Jacy's policy was a claims-made policy, incidents occurring during the policy period must be reported while the policy was in force, or during the policy's automatically extended 60-day reporting period after the end of the policy period, or during any extended reporting period if Jacy purchases extended reporting coverage. The letter positively and unequivocally informed Jacy that its policy was not renewed. Jacy necessarily was informed of two things: (1) coverage under the policy has ended; (2) and no unreported claims will be covered unless Jacy purchases an extended reporting period or the claim is made within 60 days after the end of the policy period on July 1, 2011. The letter therefore is sufficient notice of nonrenewal.

The record shows that Jacy received the letter on or before July 14, 2011, which is the date Wilson signed and indicated that Jacy did not wish to purchase extended reporting coverage. This began the 60-day extension for making claims, required under section 60A.37. Jacy did not make its claim regarding the wrongful-death action until almost a year later, well beyond the statutory 60-day extension. We therefore hold that the district court did not erroneously conclude that the MJUA is not bound to cover the claim.

The parties have forwarded other arguments, but our holding makes their consideration unnecessary.

**Affirmed.**