MICHAEL JOHN EICHTEN, BY HIS FATHER AND NATURAL GUARDIAN, FELIX EICHTEN, v. JOHN JOSEPH KLEIN. MILBANK MUTUAL INSURANCE COMPANY, THIRD-PARTY DEFENDANT.

160 N. W. (2d) 33.

June 21, 1968—No. 40,850.

*Harry N. Ray,* for appellant.

*Cragg & Barnett* and *David A. Bailly,* for respondent.

Heard before Knutson, C. J., and Rogosheske, Sheran, Peterson, and Frank T. Gallagher, JJ.

ROGOSHESKE, JUSTICE.

Appeal from a judgment in a third-party action denying automobile liability insurance coverage to defendant and third-party plaintiff, John Joseph Klein.

Originally, an action was commenced on behalf of Michael Eichten

against Klein for injuries sustained on June 12, 1963, at about 7:05 p. m. when he was struck by Klein's automobile while riding his bicycle on a St. Paul street. Upon Milbank Mutual Insurance Company's refusal to undertake his defense, Klein commenced this third-party action, alleging that at the time of the accident he was protected against liability for plaintiff's claim under an automobile liability policy issued by Milbank through its agent, Wulkan Insurance Agency. After trial, the court found in favor of Milbank upon the ground that the policy relied upon had lapsed for nonpayment of premium and rejected Klein's claim that Milbank had, with knowledge of plaintiff's pending claim, accepted and retained a tender of payment for renewal of a policy issued November 23, 1962, which, according to its terms, expired on May 23, 1963, 20 days before the accident.

The determinative issue presented is whether the evidence compels a finding that Milbank accepted the tender of payment as claimed and therefore, under Seavey v. Erickson, 244 Minn. 232, 69 N. W. (2d) 889, as a matter of law waived its right to declare the policy lapsed or, as defendant further argues, is estopped from asserting that the policy had lapsed.

Milbank had insured Klein for successive 6-month periods for several years before the date of the accident. On September 9, 1962, Klein let his policy lapse by failing to pay the premium then due and was without coverage until November 23, 1962, when the Wulkan Agency, at Klein's request, secured a new policy from Milbank covering Klein for the 6-month period ending at 12:01 a. m., May 23, 1963. The policy had no provision for an automatic renewal after its date of expiration. Unknown to Klein, however, Milbank had a company policy of extending coverage automatically when a premium was received at the home office within 10 days following the premium due date. Such premiums were then customarily sent to the local agent with instructions to submit a renewal application.

Prior to the expiration of the policy in question, Milbank notified Klein that his policy would be renewed or reissued if he paid a premium of $30.90 on or before May 22. Klein did not respond, and Milbank subsequently informed him that if he remitted the premium within 10 days

after expiration his policy would be renewed or reissued effective May 23, 1963. The notice stated that in the event payment was not received within the grace period coverage would cease at midnight, May 22. Klein did not respond until June 11, 9 days after the expiration of the grace period. On that day, as he testified, he mailed a check in the amount of $30.90, a copy of the original premium notice, and a request for receipt to Milbank. The letter was mailed at the St. Paul post office, where Klein is employed, and was postmarked twice. The second postmark was made at 8:30 p. m. on June 12. The letter was received by Milbank on June 13. The following day, Milbank endorsed and returned the insured's check to the Wulkan Agency together with a letter notifying the agency that the policy had lapsed and advising the agency to "be sure that Mr. Klein understands" that the policy "provided coverage only to May 23" and "was not in effect at the time [June 12] of this accident." The letter further advised:

"* * * Because of this accident we wish to review the underwriting on this file before providing further coverage for this individual. If you feel that you would care to again recommend we provide insurance for the risk, please forward a completed, signed application giving us the facts pertaining to the accident so that we may reconsider from an underwriting standpoint."

After receipt of the letter the agency through its employee, Kenneth Fosland, promptly notified Klein that the company denied coverage. At that time Fosland also asked Klein if he desired to be insured by Milbank in the future. The statements of Klein and Fosland—the only testimony submitted—differ as to the negotiations which followed. Fosland testified that Klein not only told him that he desired future coverage but answered questions regarding his application therefor and consented to using his check for payment of the premium on the new policy. Pursuant to Fosland's understanding, an application was prepared and signed by the agency and submitted to Milbank accompanied by Klein's check, and a new policy was issued effective June 18, 1963. Klein's testimony, although confusing and uncertain as to dates and times, tends to support Fosland's testimony in that he told Fosland that

he "still wanted to be insured with Milbank." However, he insists he understood that the old policy was being renewed, although after receiving the new policy—which he retained and admitted provided protection to him for a 6-month period—he neither objected to its effective date nor demanded a return of his payment. He also testified that he "felt" he had a 30-day grace period to pay the premium and that he contacted the state insurance commissioner's office "to find out if there were any laws" establishing such a grace period. After he was advised of Milbank's denial of coverage, he discussed the accident and his coverage on the telephone with the president of Milbank, to whom he had been referred by the commissioner's office and the agency.

The trial court found that no insurance "was in force and effect at the time of the accident" for the reasons that the policy relied upon "had lapsed for want of the payment of the premium" and that the evidence failed to establish that Milbank or its agent had "done anything of an affirmative nature to amount to a waiver of its right to cancel the policy, or which would estop the company from exercising its right to cancel the policy for non-payment of premium." In a memorandum accompanying the order denying Klein's post-trial motion, the court emphasized that the proof was insufficient to sustain Klein's claim because his testimony "failed in its persuasiveness." Clearly, the record supports this determination.

Appellant contends that the mere acceptance by Milbank of the premium check "created a forfeiture of the [insurer's] right to declare the policy terminated." He relies upon the rule set forth in Seavey v. Erickson, *supra,* that where an insurer, after knowledge of the loss, accepts and retains the premium due on a policy after expiration of its term, such conduct is deemed to have waived the insurer's right to cancel the policy. However, as the trial court determined, the essential evidentiary basis for applying this rule does not exist in this case. The evidence does not support, much less compel, a finding that Milbank accepted Klein's tender of payment of the premium due on the policy, which, by its express terms, expired 20 days prior to the accident. Rather, the evidence, viewed most favorably to support the court's determination, establishes that after the loss occurred and Klein had been informed that coverage

was denied, Milbank, at Klein's request, applied the insured's check to the payment of the premium on a new policy, which Klein accepted and retained for its full term. This is not the type of acceptance and retention of an overdue premium which occurred in the early case of Smith v. St. Paul F. & M. Ins. Co. 3 Dak. 80, 13 N. W. 355, or in Farm Bureau Mutual Auto. Ins. Co. v. Bobo (4 Cir.) 214 F. (2d) 575, or Seavey v. Erickson, *supra,* all relied upon by the insured. In Smith, the insured defaulted on a note given for the premium on a policy. The agent of the insurer accepted and retained late payment of the note and returned it marked "Paid in full" without informing the insured that the insurer was declaring the policy forfeited. Upon these findings, waiver of the forfeiture was upheld. In the Seavey case, the trial court's finding of waiver was based upon the failure of the insurer to give its customary notice of the time of payment of a renewal premium, upon which notice the insured relied. Similarly, in Farm Bureau Mutual Auto. Ins. Co. v. Bobo, *supra,* the insurer was held to waive a forfeiture upon a finding of oral assurances to the insured that he could safely delay the payment of his premium for 30 days. Other authorities cited by the insured are equally inapplicable. The mere failure of Milbank or its agent to make a formal offer to return the premium check, and its acceptance of prospective coverage without the insured himself having signed the application for the new policy, are insufficient to support a finding of the kind of acceptance essential to constitute a waiver as a matter of law.

With regard to the question of estoppel, we are unable to discover anything in the record which would constitute the kind of misleading representation, change of position, or ignorance by the insured which might raise an estoppel. The insured introduced no evidence that he relied on any custom or promise of the insurer or its agent in ignoring the notices sent to him by the insurer. Cf. Laverty v. Hawkeye Security Ins. Co. 258 Iowa 717, 140 N. W. (2d) 83.

Affirmed.