372 N.W.2d 763 (1985)
MINNESOTA FEDERAL SAVINGS AND LOAN ASSOCIATION, Respondent,
v.
IOWA NATIONAL MUTUAL INSURANCE COMPANY, Appellant.
No. C6-85-71.
Court of Appeals of Minnesota.
August 13, 1985.
Review Denied November 1, 1985.
*764 Douglas R. Archibald, Cosgrove & Hanson, Minneapolis, for respondent.
Thomas D. Jensen, Minneapolis, for appellant.
Heard, considered and decided by SEDGWICK, P.J., and WOZNIAK and RANDALL, JJ.

OPINION
WOZNIAK, Judge.
Iowa National Mutual Insurance Company (Iowa Mutual) appeals from a judgment entered in favor of Minnesota Federal Savings and Loan Association (Minnesota Federal). Iowa Mutual contends that the trial court erroneously determined (1) that the insurance policy in issue was ambiguous, (2) that Iowa Mutual breached the insurance contract, (3) that Iowa Mutual is estopped from denying Minnesota Federal's claim, and (4) that Minnesota Federal is entitled to damages of $60,800. We affirm as modified.

FACTS
In September 1980, John Edeburn financed a home by entering into a mortgage agreement with Minnesota Federal. Minnesota Federal and Edeburn also entered into an escrow agreement whereby Minnesota Federal agreed to pay Edeburn's homeowner's insurance premiums. Edeburn insured his property with Iowa Mutual. Minnesota Federal is named as the mortgagee in Edeburn's insurance policy with Iowa Mutual.
Iowa Mutual set up a "direct bill" policy and premium notices were supposed to be sent directly to Minnesota Federal as well as to Edeburn and the Nordstrom Insurance Agency (the agency through which Edeburn procured his policy). Minnesota Federal paid the first annual premium on September 26, 1980.
Edeburn's homeowner's insurance policy was due for renewal on September 26, 1981. It is undisputed that in August 1981, Edeburn received a "renewal premium notice" from Iowa Mutual which stated that the next premium was due on September 26, 1981. Likewise, it is undisputed that on October 1, 1981, Edeburn received an "expiration premium notice" which stated that the policy had expired on September 26, 1981, but receipt of the total premium due by October 11, 1981, would continue coverage from September 26, 1981.
After receiving this second notice, Edeburn contacted the Nordstrom Insurance Agency. It is undisputed that on October 1 the Nordstrom Insurance Agency contacted Minnesota Federal by telephone and notified it that the premium on Edeburn's policy was due by October 11, 1981. Minnesota Federal did nothing. The Nordstrom Insurance Agency mailed a copy of the "expiration premium notice" to Minnesota Federal that same day.
The particular date that Minnesota Federal received written notice of the premium due was disputed at trial. Following the trial, the jury determined that Minnesota Federal never received a "renewal premium notice," but it did receive on October 5, 1981 the copy of the "expiration premium *765 notice" which the Nordstrom Insurance Agency had mailed.
Upon receipt of this notice, Minnesota Federal did process the premium payment. It set up its computers to pay the premium on October 9, 1981, but, as a result of a computer error, Minnesota Federal did not mail the payment on October 9, 1981. The trial court determined that Minnesota Federal sent the premium payment on October 13, 1981, and that Iowa Mutual received it on October 16, 1981. The jury further found that Iowa Mutual did not accept Minnesota Federal's premium payment.
On October 19, 1981, Edeburn's home was destroyed by fire. Iowa Mutual denied Edeburn's claim under the policy. Edeburn filed suit both against Iowa Mutual for failing to satisfy his claim and against Minnesota Federal for failing to keep the insurance policy in effect in accordance with the escrow agreement. Minnesota Federal crossclaimed against Iowa Mutual for any amounts it might owe Edeburn.
The trial court granted summary judgment against Edeburn on the grounds that Edeburn had received all the required notices under the policy and that, as to Edeburn, the policy had lapsed. That summary judgment was never appealed.
Minnesota Federal subsequently settled Edeburn's claim against it and paid Edeburn $40,066 in cash, satisfied his outstanding mortgage of $16,934 and waived interest and property taxes in the amount of $3,800, for a total settlement of $60,800. Minnesota Federal then pursued its crossclaim against Iowa Mutual.
With respect to Minnesota Federal's claim against Iowa Mutual, the trial court concluded that (1) the insurance contract between Iowa Mutual and Minnesota Federal is ambiguous, (2) Iowa Mutual is estopped from declaring that the policy expired, and (3) Iowa Mutual breached its contract with Minnesota Federal. The trial court awarded Minnesota Federal $60,800 in damages.
Iowa Mutual made a motion for amended findings and conclusions. The trial court denied the motion, entered judgment against Iowa Mutual and Iowa Mutual appeals.

ISSUES
1. Did the trial court err in determining that Iowa Mutual's insurance contract with respondent is ambiguous?
2. Did the trial court err in determining damages?

ANALYSIS

I.
Initially, we note that the summary judgment against Edeburn determined that there was no policy coverage of Edeburn's interest in effect on the date of the fire. Even though the trial court found that Edeburn's interest was not protected under the policy, Minnesota Federal can still have a protected interest under that policy. The standard mortgage clause provided in Edeburn's insurance policy gives rise to an agreement between Iowa Mutual and Minnesota Federal which is separate and divisible from the agreement that Iowa Mutual had with Edeburn. See American National Bank and Trust Co. v. Young, 329 N.W.2d 805, 810 (Minn.1983) (quoting 5A J. Appleman, Insurance Law and Practice § 3401, at 282 (1970 & Supp.1981)). The only issue in this case is what kind of protection, if any, did the mortgage clause in Edeburn's policy provide to Minnesota Federal under the particular facts of this case.
Iowa Mutual contends that the trial court erroneously determined that its insurance contract with Minnesota Federal is ambiguous.
Whether an insurance policy is ambiguous is a question of law to be decided initially by the trial court. Columbia Heights Motors v. Allstate Insurance Co., 275 N.W.2d 32, 34 (Minn.1979). We must determine whether the trial court correctly found ambiguity in Iowa Mutual's insurance policy. See id. While the trial court *766 failed to explain its finding of ambiguity, we can discern from the record the considerations that were before it. If the language of the policy is reasonably subject to more than one interpretation, there is ambiguity. Id. Any ambiguity should be construed in favor of the insured and against the insurer. Western World Insurance Co. v. Hall, 353 N.W.2d 221, 223 (Minn.Ct. App.1984).
By the express terms of the mortgage clause in Edeburn's policy, the insurer will continue to insure the mortgagee's interest if the mortgagee pays the premium "on demand" after the insured mortgagor has failed to do so.[1] The term "on demand" is not defined in the contract. The only other references as to when the mortgagee can pay the premium and thus protect its interest are contained in (1) the mortgage clause cancellation provision, and (2) the renewal plan termination provision.
Minnesota Federal argues that it protected its interest as mortgagee in accordance with the mortgage clause by paying the premium eight days after receiving written notice that the policy had terminated, subject to renewal if payment was received by October 11. In essence, Minnesota Federal argues that payment within eight days is payment on demand. Minnesota Federal further argues that it protected its interest as mortgagee in accordance with the mortgage clause cancellation provision by paying the premium within ten days after receiving written notice of cancellation.[2]
Iowa Mutual claims that the contract terminates automatically in accordance with the renewal plan ten days after the mortgagee received written notice, irrespective of whether the mortgagee makes payment within those ten days.[3] In essence, Iowa Mutual argues that Minnesota Federal could have kept the policy in effect if it had paid the premium by October 11, 1981, in accordance with the premium expiration notice.[4]
Assuming that Minnesota Federal's interpretation of the mortgage clause cancellation provision is correct, the question becomes whether payment must be sent or received within those ten days. Generally, premium payments are not effective until actual receipt by the insurer. See 14 J. Appleman, Insurance Law and Practice § 7990 at 410 (1985). However, even if we were to decide that the general rule regarding premium payments is applicable to the facts of this case, it would still be unclear whether payment within eight days is sufficient to satisfy the on demand requirement of the mortgage clause.
We need not decide whether the mortgage clause cancellation provision or *767 the renewal plan termination provision applies here, or which of the interpretations offered is more accurate or whether eight days is payment on demand. We must merely decide whether the provisions in question are reasonably subject to more than one interpretation. See Columbia Heights, 275 N.W.2d at 36. We find that the policy is ambiguous as to when payment may be made by the mortgagee in order to protect its interest in the property. Accordingly, we resolve the ambiguity against the insurer, Iowa Mutual, and in favor of extending coverage to the insured, Minnesota Federal. See Western World, 353 N.W.2d at 223. Iowa Mutual breached the insurance contract by failing to protect Minnesota Federal's interest as mortgagee after it paid the premium.
Minnesota Federal's reliance on provisions of the nonrenewal clause are misplaced since this is not a nonrenewal situation. Iowa Mutual did elect to renew the policy and it was Edeburn who failed to pay the premiums due. Accordingly, the nonrenewal provision is inapplicable.
In light of the resolution of the previous issues, we need not decide whether under the facts of this case Iowa Mutual was further required to give a separate notice of termination to Minnesota Federal.

II.
Iowa Mutual claims that the trial court erred in determining damages in the amount of $60,800. Iowa Mutual argues that Minnesota Federal's damages are limited under the contract to its interest as mortgagee. We agree.
The mortgage clause of the insurance contract provides:
If a mortgagee is named in this policy, any loss payable shall be paid to the mortgagee and you, as interests appear.

The amount payable as "interests may appear" under the mortgage clause of an insurance contract is measured by the indebtedness which the mortgagor owes under his note and mortgage at the time of the loss. See Phalen Park State Bank v. Reeves, 251 N.W.2d 135 (Minn.1977); see also, 44 C.J.S. Insurance § 187 at 884 (a mortgagee has an insurable interest in the mortgaged property entirely separate and distinct from that of the mortgagor to the extent of his interest in the property as mortgagee).
Here, the indebtedness which Edeburn owed under his note at the time of the fire was $16,934. Therefore, $16,934, not $60,800, is the extent of Minnesota Federal's interest in the insurance contract at the time of loss.
Likewise, the trial court's conclusion that Iowa Mutual was estopped from declaring that the policy had expired does not support the trial court's damages award. The doctrine of estoppel cannot be used to extend the coverage of an insurance policy. Shannon v. Great American Insurance Company, 276 N.W.2d 77 (Minn.1979); 16B J. Appleman, Insurance Law & Practice § 9090 at 579 (1981). Estoppel can only affect rights reserved in the policy. Insurance Law & Practice § 9090 at 579. Here, Minnesota Federal had rights as a mortgagee under the policy; it did not have the rights of an insured. Thus, even under an estoppel theory, Minnesota Federal's interest or coverage is limited to the amount that was outstanding on Edeburn's mortgage on the date of the fire.
We also note that Minnesota Federal never pleaded estoppel, nor raised the issue during the course of the trial. Indeed, the record is abundantly clear that Minnesota Federal could not have reasonably relied to its detriment on failure of receipt of a premium renewal notice.
Fundamentally, it is the lack of knowledge that justifies the application of estoppel. Estoppel does not continue indefinitely if the circumstances relied upon to justify it cease to be operational.
As stated by our supreme court:
With regard to the question of estoppel, we are unable to discover anything in the record which would constitute the kind of *768 misleading representation, change of position, or ignorance by the insured which might raise an estoppel.
Eichten v. Klein, 280 Minn. 449, 453, 160 N.W.2d 33, 36 (1968).
Such is the case here. Where is the ignorance Minnesota Federal claims it had under these facts? Minnesota Federal knew from its files when the premium was due. It contracted with its mortgagor to pay from the escrow account the premium when due and cannot rely upon actions of third parties over which they have no control.
More importantly, Minnesota Federal had several other reasons to know that the payment was due and unpaid. On October 1, 1981, the Nordstrom Insurance Agency telephoned with this information. Minnesota Federal received the expiration notice on October 5. It knew on October 9, 1981, when payment was attempted to be made but when, due to its own errors, Minnesota Federal failed to place the actual payment in the mail until October 13, 1981.
The claim of "ignorance" is without merit. Minnesota Federal never notified the insured that it was having problems making the premium payments. Minnesota Federal never notified Iowa Mutual of its problems.
In light of its own conduct and in light of the facts of which it had complete knowledge, estoppel simply does not apply.

DECISION
We find that the insurance contract is ambiguous as a matter of law. Iowa Mutual breached the insurance contract by failing to protect Minnesota Federal's interest as mortgagee after it paid the premium. The trial court's damage award is modified to reflect Minnesota Federal's interest as mortgagee at the time of the loss in the sum of $16,934, plus interest.
Affirmed as modified.
NOTES
[1] The mortgage clause provides:

If we deny your claim that denial shall not apply to a valid claim of mortgagee, if the mortgage[e]:
a. pays any premium due under this policy o[n] demand if you [insured mortgagor] have neglected to pay the premium.
(Emphasis added.)
[2] The mortgage clause provides:

If the policy is cancelled, the mortgagee shall be notified, in writing, at least 10 days before the date cancellation takes effect.
* * * * * *
The cancellation provision provides:
We may cancel this policy only for the reasons stated in this condition * * *
(1) When you [insured mortgagor] have not paid the premium. * * *
(Emphasis added.)
[3] The renewal plan provides:

2. If we elect to continue this insurance, we will renew this policy if you pay the required renewal premium for each successive policy period * * *. You must pay us prior to the end of the current policy period or else this policy will expire.
3. If a mortgagee is named in this policy, we will continue this insurance for the mortgagee's interest for ten days after written notice of termination to the mortgagee and then this policy will terminate.
(Iowa Mutual argues that since Minnesota Federal received notice on October 5, 1981, Minnesota Federal's interest as mortgagee was only protected until October 15, 1981, four days prior to the loss.)
[4] Minnesota Federal received a premium expiration notice on October 5, 1981, stating that the policy had expired on September 26, 1981, but that receipt of the total premium due by October 11, 1981 would continue coverage retroactive from September 26, 1981.

(Emphasis added.)