**John A. KIELKUCKI, Appellant,**

v.

**AMERICAN FAMILY MUTUAL INSURANCE COMPANY,**
**Respondent.**

**No. C8–86–1555.**

Court of Appeals of Minnesota.

March 31, 1987.

John P. Clifford, Mark D. Streed, Meshbesher, Singer & Spence, Ltd., Minneapolis, for appellant.

Mark A. Gwin, Cousineau, McGuire, Shaughnessy & Anderson, Chartered, Minneapolis, for respondent.

Heard, considered and decided by HUSPENI, P.J., and PARKER and LESLIE, JJ.

## OPINION

LESLIE, Judge.

Appellant John A. Kielkucki commenced a declaratory action after his automobile liability insurer, respondent American Family Mutual Insurance Company, refused to extend liability coverage subsequent to his involvement in an automobile accident. American Family claimed Kielkucki's policy had lapsed before the accident took place due to nonpayment of premium. Kielkucki claimed his son mailed a conditional premium payment after the accident to retroactively cover the time period during which the accident took place. Despite the fact that insurance coverage had lapsed, Kielkucki claimed that American Family's acceptance of the payment with knowledge of the accident and Kielkucki's condition of retroactive application resulted in waiver of the right to insist on a forfeiture. The jury found the subsequent payment was not intended to be conditioned upon retroactive coverage, consequently American Family properly applied the payment towards prospective coverage starting from the time of the payment. Judgment was entered for American Family. Kielkucki's motions for judgment notwithstanding the verdict and for a new trial were denied. We affirm.

## FACTS

Kielkucki had a continuing relationship with American Family going back to 1979. From then to his accident he purchased American Family insurance for his automobile, boat and home. On several occasions he let his insurance on these items lapse for nonpayment of premiums. When a lapse would occur, Kielkucki would eventually renew his insurance. Upon renewal the insurance would only have prospective application. At all times he dealt with American Family agent Paul Shirer in meeting his insurance needs.

In 1983 Kielkucki's automobile insurance covered a six month period. In May a notice was sent to Kielkucki informing him that his six months of coverage ended on June 16, 1983. To renew this insurance a new premium payment was due by that date. Because Kielkucki was on vacation his daughter, Mary Jo Holupchinski, actually received this notice.

Mary Jo had been assigned the task of paying her father's bills while he was out of the country. Mary Jo mailed a payment before the due date. She elected to pay half the amount due pursuant to American Family's "two-pay" plan. Consequently, the payment made provided Kielkucki with three months of coverage, June 16, 1983 through September 16, 1983. Under the "two-pay" plan the second payment, for the second three months, was due on August 16, 1983, 60 days into the insurance period. This second payment was not made on time.

Kielkucki should have received notice on August 1, 1983 that this second payment was due, 45 days into the insurance period. The Kielkuckis testified at trial that they never received this notice. American Family presented evidence that their computer system, pursuant to the company's normal custom and practice, would have sent the notice to Kielkucki on August 1, 1983. Kielkucki should have also been sent a cancellation notice when the August 16, 1983 payment was not made. This notice should have been mailed on August 30, 1983, 75 days into the insurance period. The Kielkuckis also denied receiving this notice, while American Family maintained that their system would have sent all required notices on time.

On November 1, 1983 Kielkucki was involved in a car accident. Kielkucki called his daughter Mary Jo and asked her to contact American Family agent Shirer to tell him the bad news. Mary Jo reported the accident to Shirer, who responded that he had some bad news for them. Shirer informed her that the policy had lapsed prior to the accident on September 16, 1983 because of nonpayment of premiums.

Mary Jo told Kiekucki's son Jack. Jack then sent the second payment to American Family. The necessary check was mailed two weeks after the accident with following notation: "Payment of car ins., 9–16–

83, $72.65, policy no. 22–307433–01." The check contained the following notation in the memo section: "Policy No. 22–304733–01; September 16, '83 thru Dec. 16, '83." Kielkucki testified at trial that his "purpose in sending the check in was to make payment for the insurance coverage for my father for the period of September 16th, 1983, through December 16th, '83, and to cover any type of claims coming due during that time period."

Karen Butler-Moore, an employee of American Family, testified that upon receipt of the payment she noted it appeared to be intended for insurance coverage running from September 16, 1983 to December 16, 1983. Yet, the payment was applied pursuant to internal company policy as a renewal of Kielkucki's insurance starting on the date of payment. This particular late payment was thus treated similarly to all of Kielkucki's previous late payments.

Subsequent to reinstatement of a policy it is American Family's custom and practice to send out a declaration sheet indicating the renewal. Such a document was received by agent Shirer who testified that he sent it on to Kielkucki. The Kielkuckis denied ever receiving the document.

After the late payment was made, the pedestrians involved in the accident sued Kielkucki. American Family rejected Kielkucki's tender of defense as his policy had lapsed during the period of the accident for nonpayment of premium. Kielkucki commenced a declaratory action.

Following trial the jury was presented with a special verdict form. They found that American Family did properly mail a premium renewal notice, notice of cancellation, and declaration sheet to Kielkucki. The jury was asked, "Did Mr. John A. "Jack" Kielkucki send his check of November 15th to American Family Mutual Insurance Company intending that they only cash it if they were going to apply it only to the policy period of September 16, 1983, thru December 16, 1983?" The jury responded, "No." Judgment was entered for American Family. Kielkucki moved for judgment notwithstanding the verdict or

for a new trial. In denying this motion the trial court wrote:

> [T]he jury could have reasonably believed that the check was to be cashed *only* if it would be applied to the policy period of September 16, 1983. Despite Jack Kielkucki's testimony to the contrary, the check was never endorsed with this restriction. Therefore it is possible and within the jury's province that the jury did not believe Jack Kielkucki's testimony.

## ISSUE

Did the trial court properly hold there was sufficient evidence to support the jury's finding that the late premium payment was not conditioned on retroactive application to the period of the accident and no waiver of forfeiture took place?

## ANALYSIS

Appellant maintains that judgment notwithstanding the verdict should have been granted because there is no competent evidence supporting the verdict. "Judgment notwithstanding the verdict 'may be granted only when the evidence is so overwhelming on one side that reasonable minds cannot differ as to the proper outcome.'" *Lamb v. Jordan*, 333 N.W.2d 852, 855 (Minn.1983) (*citing* 4 D. McFarland & W. Keppel, Minnesota Civil Practice § 24.02 (1979) and Supp.1982)). All the evidence, including that favoring the verdict, must be taken into account, the evidence should be viewed in the light most favorable to the verdict, and the trial court may not weigh the evidence or judge the credibility of the witnesses. *Id.* Unlike a new trial motion, which involves a question of fact, judgment notwithstanding the verdict involves a question of law. *Id.*

■ In this case the jury's determination on the following question is at issue: "Did Mr. John A. "Jack" Kielkucki send his check of November 15th to American Family Mutual Insurance Company intending that they only cash it if they were going to apply it to the policy period of September

16, 1983, thru December 16, 1983?" The jury found that Jack Kielkucki did not so intend. The trial court affirmed this finding stating that the check was not endorsed to reflect such an intention. Consequently, no waiver of the right to claim a forfeiture took place. We find sufficient evidence in the record supporting this conclusion.

We first note that the rendered check was not clearly restrictively endorsed. The notation that appeared on the front of the check itself was ambiguous in this respect. This ambiguity was compounded by American Family's company policy of acceptance of late payments for *prospective* application. Kielkucki's knowledge of this policy was clearly established by evidence of his prior dealings with the company. Kielkucki habitually allowed his various policies to lapse. When he eventually made late payments, they were always applied prospectively. These facts provided sufficient basis for the jury's conclusion.

■ Even assuming Kielkucki's payment was properly intended to have retrospective application only, the facts present do not establish waiver of American Family's right to claim forfeiture. The seminal Minnesota case on the question of waiver is *Seavey v. Erickson*, 244 Minn. 232, 69 N.W.2d 889 (1955). In *Seavey* the insurance company accepted and retained a late premium for an accident that had occurred subsequent to lapse of the policy. *Id.* at 246, 69 N.W.2d at 898. The insurance company demanded and received cooperation in the investigation of the accident. *Id.* at 247, 69 N.W.2d at 898. They took charge of, and paid for, disposal of the wreckage. *Id.* Yet, with full knowledge that the object of the insurance had been destroyed, the insurance company applied the late payment prospectively. *Id.* at 246–47, 69 N.W.2d at 898. The *Seavey* court found the insurance company's acts constituted waiver of the right to insist on forfeiture. *Id.*

The *Seavey* court began its analysis:

The law seems to be well settled, and has frequently been acted upon, that if, in negotiations or transactions with the assured after knowledge of the forfeiture, the insurer recognizes the continued validity of the policy, or does acts based thereon, the forfeiture is as a matter of law, waived, and such a waiver need not be based on any new agreement or an estoppel.

*Seavey*, 244 Minn. at 245–46, 69 N.W.2d at 898 (quoting *Mee v. Bankers' Life Association*, 69 Minn. 210, 217, 72 N.W.74, 77 (1897)).

Applying this general principle, the *Seavey* court also noted that "where the insurer has knowledge of the total destruction of the insured property and thereafter accepts a premium on insurance covering such property, it should be deemed to have waived a forfeiture of the policy." *Seavey*, 244 Minn. at 246, 69 N.W.2d at 898. The court ultimately cited all the circumstances present as establishing that a waiver of forfeiture had taken place:

In this case a large part of the premium covered collision insurance. At the time the premium was accepted the insurer had full knowledge of the fact that the insured car had been completely demolished. Its contention that it accepted the premium to reinstate the policy as of the day and hour when the premium was paid, to operate prospectively on an automobile it then knew was no longer in existence as an automobile, is hardly tenable. Acceptance and retention of the premium under these circumstances is consistent only with the recognition of the continued existence of the insurance coverage and not with its reinstatement. Added to this is the fact that the insurer demanded of the insured and received co-operation in investigating the accident; that it took charge of the wreckage and paid for its disposal; and that the receipt for the premium shows that it was accepted as a renewal and not as a reinstatement. Under these circumstances we must hold that the court's finding that there was a waiver is sustained by the evidence.

*Id.* at 246–47, 69 N.W.2d at 898.

Subsequent Minnesota cases have dealt with the breadth of application of waiver as

enunciated in *Seavey*. The court in *Lievers v. National Insurance Underwriters*, 257 Minn. 268, 101 N.W.2d 817 (1960) stated the rule as follows: "[T]he right to insist upon a forfeiture may be waived under circumstances where an insurer entitled to forfeiture, with knowledge of the default, treats the contract as in force and deals with the insured in a manner *consistent only* with a purpose on its part to regard the contract as still subsisting and not terminated by the default." *Id.* at 272, 101 N.W.2d at 820 (emphasis in original). In that particular case the court found the rule to be inapplicable because the insured did not have knowledge of the loss at issue when it accepted the premium and did not treat the contract as in force. *Id.* at 271–72, 101 N.W.2d at 819–20.

In *Eichten v. Klein*, 280 Minn. 449, 160 N.W.2d 33 (1968) the court stated the *Seavey* rule somewhat differently: "[W]here an insurer, after knowledge of the loss, accepts and retains the premium due on a policy after expiration of its term, such conduct is deemed to have waived the insurer's right to cancel the policy." *Id.* at 452, 160 N.W.2d at 36. The court in *Eichten* made clear that the "mere acceptance" of a late premium check did not alone create waiver. *Id.* The insured in *Eichten* had been informed of denial of coverage for nonpayment of premium and had requested *prospective* application of the late payment. *Id.* Thus, the *Eichten* court found the *Seavey* rule inapplicable. *Id.*

In this case American Family has not waived its right to forfeiture under *Seavey* and subsequent caselaw. Although no Minnesota case is on all fours with the facts here, the rule spawned by insurance waiver caselaw leads to this result. Unlike the facts in *Seavey*, American Family was not aware of the "total destruction" of the subject of insurance. *Seavey*, 244 Minn. at 246, 69 N.W.2d at 898. American Family merely knew an accident had taken place. Further, in light of the parties' previous dealings we cannot say on the facts here that American Family, "with knowledge of the default, treat[ed] the contract as in

force and [dealt] with the insured in a manner *consistent only* with a purpose on its part to regard the contract as still subsisting and not terminated by the default." *Lievers*, 257 Minn. at 272, 101 N.W.2d at 820 (emphasis in original). It is clear that American Family treated the insured consistent with the position that only prospective coverage would be allowed. This treatment and result are consistent with the prior dealings of the parties.

## DECISION

There was sufficient evidence supporting the jury finding that appellant's late premium payment was not intended to only be applied retroactively. Regardless, the facts here do not satisfy the *Seavey* requirements for waiver of the insurer's right to insist on forfeiture.

Affirmed.