**MIDWEST FEDERAL SAVINGS AND LOAN ASSOCIATION OF MINNEAPOLIS, Respondent,**

v.

**WEST BEND MUTUAL INSURANCE COMPANY, Appellant.**

No. C6–86–2011.

Court of Appeals of Minnesota.

June 16, 1987.

William S. Borchers, Hessian, McKasy & Soderberg, Minneapolis, for respondent.

Douglas R. Archibald, Cosgrove & Haskell, Minneapolis, for appellant.

Considered and decided by RANDALL, P.J., and WOZNIAK and NIERENGARTEN, JJ., with oral argument waived.

## OPINION

WOZNIAK, Judge.

Appellant West Bend Mutual Insurance Company (West Bend) appeals from the summary judgment entered in favor of respondent Midwest Federal Savings & Loan Association (Midwest Federal), claiming that the trial court erred (1) in determining that Midwest Federal is a mortgagee under the terms of a fire insurance policy issued by West Bend, (2) in ruling that West Bend is precluded from asserting usury as a defense, and (3) in computing the amount Midwest Federal is entitled to recover. West Bend also argues that the trial court abused its discretion in denying the motion to dismiss for Midwest Federal's failure to prosecute this action. We affirm as modified.

## FACTS

This action arises out of West Bend's refusal to pay Midwest Federal under a standard mortgage clause of a fire insurance policy following the total destruction of the insured property. Pursuant to Minn.R.Civ.App.P. 110.04, the parties submitted an Agreed Statement Of The Record which was approved by the trial court. The undisputed facts show that David and Jolyn Shepard purchased a mobile home pursuant to a contract and security agreement dated February 10, 1975, granting the seller a first lien on the home. The seller assigned its interest to Midwest Federal within two weeks.

The contract required the Shepards to maintain fire insurance on the property. In January 1977, West Bend issued a fire insurance policy insuring the home. The policy was issued through West Bend's agent, Lakeside Agencies, Inc. The policy named the Shepards as "insureds" and provided that a loss was payable to Midwest Federal, "mortgagee, as his, her, its or their interest may appear." The policy also contains a "standard mortgage clause," providing in part:

Notwithstanding any other provisions of this policy, if this policy shall be made payable to a mortgagee of the covered real estate, no act or default of any person other than such mortgagee or his agent or those claiming under him, whether the same occurs before or during the term of this policy, shall render this policy void as to such mortgagee nor affect such mortgagee's right to recover in case of loss on such real estate.

West Bend concedes that this clause forms a separate contract between the insurer and a mortgagee under the policy, free from any defenses against the insured.

On March 22, 1977, West Bend's agent sent Midwest Federal a copy of the policy together with a letter, stating:

Here is the policy to cover the loan for the above. After talking to you Friday and finding the policy covers a mobile-home rather that a conventional house we will have to re-write this. I know you need this until I furnish you with another policy but, I will need this back for cancellation.

On the same day, West Bend itself sent Midwest Federal, as "mortgagee," a notice of intent to cancel the policy. Again, on June 14, 1977, West Bend sent Midwest Federal, as "mortgagee," another notice of intent to cancel. The policy, however, was reinstated by an endorsement dated June 25, 1977, executed by West Bend's agent. West Bend later renewed the policy for another one-year period, effective January 19, 1978. The renewal certificate again named Midwest Federal as a "mortgagee."

On February 25, 1978, the home was totally destroyed by a fire. The Shepards presented their claim which West Bend denied, alleging that the Shepards started the

fire. West Bend also denied Midwest Federal's claim under the policy, arguing that Midwest Federal was subject to the same defenses because it was not a "mortgagee," but merely a "loss-payee."

In January 1979, the Shepards sued West Bend to recover under the terms of the policy, and in February 1979, Midwest Federal sued West Bend in a separate action. The Shepards's case was tried in April 1982, and the trial court found that the Shepards were responsible for the fire.

While the Shepards's case was pending, Midwest Federal took no action in its suit against West Bend. Then in October 1984, Midwest Federal began discovery, to which West Bend responded slowly. At one point in the fall of 1985, after a five-month discovery dispute, Midwest Federal brought a motion to compel discovery.

In April 1986, West Bend moved to dismiss the complaint for Midwest Federal's failure to prosecute. While that motion was pending, Midwest Federal moved for summary judgment. The motions were heard separately, but the trial court ruled on both, denying West Bend's motion to dismiss and granting summary judgment in favor of Midwest Federal.

At the time of the fire, the unpaid balance of the contract was $28,476.04. This amount represented the total payments due under the contract, including the amount financed, plus the precomputed finance charge, less payments received. In the event of prepayment in full, however, there was a rebate of the unearned portion of the finance charge, which accrued at the rate of 12.35% annually. If the contract had been prepaid in full at the time of the fire, the net prepayment payoff figure would have been $16,150.89. West Bend moved the court to reduce the judgment to this amount, but its motion was denied.

## ISSUES

1. Did the trial court abuse its discretion in denying West Bend's motion to dismiss for failure to prosecute?

2. Did the trial court err in determining that Midwest Federal is a "mortgagee" under the terms of the insurance policy?

3. Did the trial court err in determining that West Bend could not assert the defense of usury?

4. Did the trial court err in computing the amount Midwest Federal is entitled to recover?

## ANALYSIS

1. The decision to dismiss an action under Rule 41.02(1) for a failure to prosecute is within the discretion of the trial court. *Scherer v. Hanson*, 270 N.W.2d 23, 24 (Minn.1978); *see* Minn.R.Civ.P. 41.02(1). Such discretion, however, must be exercised within established guidelines:

Before an action should be dismissed for failure to prosecute, it must be shown: (1) that the delay prejudiced the defendant, and (2) that the delay was unreasonable and inexcusable.

*Id.* (footnote omitted). The primary factor to be considered in a dismissal is the prejudice to the parties. *Firoved v. General Motors Corp.*, 277 Minn. 278, 283, 152 N.W.2d 364, 368 (1967).

West Bend claims it has been prejudiced by Midwest Federal's unreasonable delay because it has lost a portion of its subrogation rights. If Midwest Federal is a "mortgagee" under the policy, it would be entitled to recovery. West Bend would then assert its subrogation rights against the Shepards. However, West Bend is entitled to only those rights which Midwest Federal had which involve separate actions against the Shepards for breach of their installment agreement.

The Shepards stopped paying their monthly installments on the contract in 1978. The six-year statute of limitations bars recovery of those installments due on the contract prior to 1981. *See* Minn.Stat. § 541.05, subd. 1(1) (1986); *Honn v. National Computer Systems*, 311 N.W.2d 1, 2 (Minn.1981) ("[w]here a money obligation is payable in installments, the general rule is

that a separate cause of action arises on each installment and the statute of limitations begins to run against each installment when it becomes due."). West Bend claims substantial prejudice because it is now barred from recovering 37 payments at $195.78 per payment, totaling approximately $7,240.

The trial court found, however, that West Bend could have preserved its right of action on these installments by joining the Shepards as third-party defendants in this particular action. West Bend argues, however, that its subrogation rights do not accrue until it has actually paid Midwest Federal, at which point it may then proceed against the Shepards. *See Travelers Indemnity Co. v. Vaccari*, 310 Minn. 97, 99, 245 N.W.2d 844, 846 (1976) (insurer is entitled to pursue its subrogation rights upon payment of a loss). West Bend insists that it had no subrogation rights until the trial court determined that it was obligated to pay Midwest Federal.

West Bend's argument is unfounded. Until it pays out benefits, West Bend's subrogation rights are not nonexistent, but merely inchoate. *State Farm Mutual Automobile Insurance Co. v. Galloway*, 373 N.W.2d 301, 305 (Minn.1985). Although it may not pursue its rights against the Shepards until it has first paid Midwest Federal, West Bend could certainly have protected its inchoate subrogation rights in a third-party action against the Shepards. It did not do so, and as the trial court noted: "[Dismissal] should not be granted if it is based upon prejudice that the Insurance Company could have avoided through its own action."

■ West Bend also argues that Midwest Federal's inexcusable delay would alone justify dismissal. *See Firoved*, 277 Minn. at 283, 152 N.W.2d at 368 (extraordinary circumstances may justify a dismissal without a showing of prejudice by defendant). West Bend notes that Midwest Federal initiated this action in February 1979, waited until October 1984 before beginning discovery, and then did nothing further un-

til West Bend brought a motion to dismiss in April 1986.

As Midwest Federal points out, however, it would have been imprudent to proceed against West Bend until judgment was rendered in the Shepards's suit since a judgment in favor of the Shepards would have entitled Midwest Federal to automatic recovery. A decision against the Shepards came in May 1982. Although Midwest Federal then waited over two years before serving discovery, since that time the case has been progressing at a moderate pace. Moreover, West Bend has contributed to the delay since 1984 by responding slowly to discovery requests.

Dismissal runs contrary to the primary objective of the law, which is to dispose of cases on their merits. *Id.* West Bend has failed to show substantial prejudice not resulting from its own conduct, and a dismissal without a showing of prejudice is justified only in extraordinary circumstances. Here, West Bend has not shown it is entitled to have the action dismissed, and the trial court did not abuse its discretion in denying the motion.

■ 2. On appeal from a summary judgment, the function of this court is to determine whether any genuine issues of material fact exist and whether the trial court erred in its application of the law. *Betlach v. Wayzata Condominium*, 281 N.W.2d 328, 330 (Minn.1979). West Bend claims that Midwest Federal is not a "mortgagee," but merely a "loss-payee" because it held a lien on personal property pursuant to a contract and security agreement. West Bend insists that the trial court erred in granting summary judgment because a material fact question exists as to whether Midwest Federal is a "mortgagee" under the terms of the insurance policy. The interpretation of the language of an insurance policy, however, is a question of law, and this court "may determine whether the trial court properly interpreted and applied the law to the facts presented." *Associated Independent Dealers, Inc. v. Mutual Service Insurance Co.*, 304 Minn. 179, 183–

84, 229 N.W.2d 516, 519 (1975) (footnote omitted).

The facts show that under the contract and security agreement Midwest Federal required the Shepards to maintain fire insurance on their mobile home. The facts also show that West Bend was aware that Midwest Federal did not hold a conventional mortgage on the mobile home. In March 1977, nearly a year before the fire, West Bend's agent sent a copy of the policy to Midwest Federal, together with a letter acknowledging that the policy would have to be rewritten. A different policy was never issued, however. West Bend sent Midwest Federal, as "mortgagee," two notices of intent to cancel the policy, one in March 1977 and another in June 1977. Nevertheless, the policy as originally written was reinstated by endorsement in June 1977 and renewed in January 1978, effective for another year, with West Bend still designating Midwest Federal as "mortgagee."

As the trial court explained in its memorandum accompanying the order for judgment:

The technical meaning of words in a contract is not controlling where the agreement indicates that the parties did not intend to use the words in their technical sense. *King v. Dalton Motors, Inc.*, 260 Minn. 124, 127, 109 N.W.2d 51, 53 (1961). The terms of an insurance policy should be construed according to what a reasonable person, in the position of the insured would have understood the terms to mean, rather than what the insurer might have intended. *Canadian Universal Insurance Company, Ltd. v. Fire Watch, Inc.*, 258 N.W.2d 570, 572 (Minn.1977). All doubts as to the meaning of the language must be resolved in favor of the insured.

Applying these principles, the trial court then held that Midwest Federal was entitled to be considered a mortgagee under the terms of the insurance policy. We agree with the trial court. Here, nothing suggests that the parties intended Midwest Federal to be a "loss payee," either at the time the policy was issued or renewed. West Bend now urges this interpretation, which clearly would result in a forfeiture of the rights Midwest Federal believed it was securing. Rights and liabilities differ between a "mortgagee" and a "loss payee," and we do not mean to suggest otherwise. Under the unique facts of this case, however, we construe the insurance coverage as mortgage coverage.

■ 3. Even if Midwest Federal is a mortgagee, West Bend argues it is nevertheless excused from paying on the policy because the underlying transaction between the Shepards and Midwest Federal has a usurious interest rate and is therefore void. The interest rate is 12.35% annually.

The trial court dismissed this argument, explaining that West Bend is a corporation barred by statute from raising the defense of usury. *See* Minn.Stat. § 334.021 (1986). West Bend contends, however, that it is not precluded from asserting the defense because it is taking over the Shepards's rights, so that its rights would be those of an individual.

The statute, however, does not make the distinction urged by West Bend. The statute states unequivocally that "[n]o corporation shall hereafter interpose the defense of usury *in any action.*" *Id.* (emphasis added). In fact, the general rule is that the defense of usury is personal to the borrower. *Phalen Park State Bank v. Reeves*, 312 Minn. 194, 205, 251 N.W.2d 135, 141 (1977). The trial court did not err in ruling that West Bend is precluded from asserting the defense.

■ 4. West Bend also argues that the trial court erred in not reducing the amount of the judgment to $16,150.89, which represents the payoff figure if the contract had been prepaid in full at the time of the fire. Instead, the court awarded respondent $27,450.06. This amount represents the payoff figure at the time of the fire, plus the contractual finance

charge accruing at the rate of 12.35% annually.

The trial court noted that the insurance policy provided that losses were payable to Midwest Federal as mortgagee "as its interests may appear" and that its "interest" is determined by the underlying contract for the sale of the mobile home. We have previously stated, however, that

> [t]he amount payable as "interests may appear" under the mortgage clause of an insurance contract is measured by the indebtedness which the mortgagor owes under his note and mortgage at the time of the loss.

*Minnesota Federal Savings and Loan Association v. Iowa National Mutual Insurance Co.,* 372 N.W.2d 763, 767 (Minn.Ct. App.1985), *pet. for rev. denied* (Minn. Nov. 1, 1985). The indebtedness at the time of the loss is represented by the $16,150.89 payoff figure, which is what the Shepards would have been required to pay Midwest Federal to clear their obligation. The trial court should have awarded this amount, plus statutory interest.

### DECISION

Judgment shall be entered in the sum of $16,150.89, plus statutory interest from February 25, 1978.

Affirmed as modified.